IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
1729 Fifth Ave N. Room 140, Birmingham, AL 35203-2000

Julia Teryaeva-Reed,
   Plaintiff

   v.

United States of America,
   Defendant

Case No. 2:24cv1068-ACA-NAD

CLAIM FOR MONETARY DAMAGES UNDER FEDERAL TORT CLAIMS ACT (FTCA)

COMES NOW, Julia Teryaeva-Reed, hereinafter the "Plaintiff" and MOVES this Honorable Court to grant her monetary damages in the amount of one million dollars ($1,000,000.00) against the United States of America, hereinafter the "Defendants", due to false imprisonment, retaliatory detention and transfer, negligent denial of medical care, abuse of process and intentional infliction of emotional distress under the Federal Torts Act Claim, hereinafter "FTCA". Additionally, Plaintiff makes a claim under Section 1983/Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), hereinafter "Bivens", based on violations of First, Fifth, Eight, and Fourteenth Amendments to the Constitution. It is at the discretion of this Court to construe this as Bivens action.

JURISDICTION AND VENUE

This claim is brought under FTCA and the Court has jurisdiction under Title 28 U.S.C. Sections 1346(b)(1), 1402(b), 2401(b), 2675(a), 2283; RICO Title 18 U.S.C. Sec. 1961. In the alternative this Court has discretion to construe this as Bivens action authorized under 28 U.S.C. Sec. 1331 and 1343(a)(3). This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. Sec. 1367. 18 U.S.C. Sec. 1961.

The Venue for this civil action is federal district court for the Northern District of Alabama pursuant to 28 U.S.C. Sec. 139(b).

EXHAUSTION REQUIREMENT UNDER FTCA

On or about June 12th, 2024 Plaintiff filed Administrative Claim (SF-95 Form and requisite Affidavit in support thereof) with the Bureau of Prisons mailed by the United States Postal Service, Certified Mail Receipt # 7011 3500 0001 4672 1112. Plaintiff is requesting to hold this motion in abeyance pursuant to FRCP 12(d) pending denial of administrative claim, or to waive exhaustion requirement and adjudicate this motion on the merits. In the alternative, this Court has discretion to construe this motion as Bivens action. (SEE Exhibit A)

EXHAUSTION REQUIREMENT UNDER BIVENS SHOULD BE WAIVED

Administrative Remedy requirement under PLRA codified in U.S.C.A. 1997e(a) was not available to Plaintiff due to her retaliatory detention in the Special Housing Unit, hereinafter "SHU", and transfer to FCI-Dublin. Supreme Court held in Ross v. Blake, 136 S. Ct. 1850 (2016) that exhaustion requirement is waived where it is not available. Same was held in Tuckel v. Grover, 660 F. 3d 1249 (10th Cir. 2011). Supreme Court held in Jones v. Bock, 549 U.S. 199 (2007) that prisoners do not need to show in their complaints that they exhausted all grievance procedures. Same in Miles v. Corizon Med. Staff, 766 Fed. Appx. 626 (10th Cir. 2019); Torns v. Mississippi Dept. of Corrections, 301 Fed. Apps 386 (5th Cir. 2008).

ARGUMENT

FACTUAL BACKGROUND

Julia Teryaeva-Reed, the Plaintiff, was convicted of arson and wire fraud charges and sentenced on July 13th, 2017 to 162 months in prison plus three (3) years supervised release. After her sentencing she was designated to FCI-Aliceville* where she remained for six (6) years from September 2017-September 2023. Warden Neely was previously employed in FCI-Tallahassee and allegedly got into physical altercation with her coworkers**. Instead of being disciplined and removed from her duties BOP promoted her to Warden position at FCI-Aliceville where she instituted a series of illegal and abusive policies***that not only did not serve any rehabilitative or disciplinary purposes but also resulted in several suicidal attempts and death by suicide in her custody. Warden Neely sent Plaintiff to the Special Housing Unit, hereinafter "SHU" twice and then transferred her to another

BOP Prison in retaliation to Plaintiff exercising her First Amendment right. After Plaintiff was transferred to FCI-Dublin, around end of March- early April she was interviewed by an FBI Agent as to Warden Neely's abusive policies and death in custody. In Section I of this brief Plaintiff makes a claim for monetary damages based on false imprisonment, retaliatory detention and transfer, abuse of process, negligent denial of medical care, and intentional infliction of emotional distress under Federal Torts Claim Act (FTCA). This court has discretion to construe this as Bivens action, and in Section II, if applicable, Plaintiff makes a claim based on her constitutional rights violations under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

RETALIATORY TRANSFER

Warden Neely expressed hostile and retaliatory behavior from the very beginning. She was not approachable and made degrading personal remarks to inmates. During Mainline her staff stood at a distance because they did not want anything to do with what she had to say and wanted her out as much as inmates did. On several occasions Plaintiff asked Warden Neely about short staffing, frequent cancellation of unit team open houses, issues that needed to be resolved with FSA Time Credits; notary; copier and printer not working for several weeks in education; no hair dryer and no hot water on the unit for several months; and cell moves. Warden Neely would tell Plaintiff to "go away" or "go talk to your unit team". None of the issues were ever resolved or addressed. In retaliation to asking questions, during Mainline Plaintiff was singled out by Warden Neely who thoroughly searched her. When pat-down search was completed Warden Neely told Plaintiff: "I will get you, Reed!". On another occasion while waiting to ask a question Plaintiff overheard Warden Neely advising her unit team not to do halfway house paperwork for those who became eligible under the new law due to short-staffing (FCI Aliceville is an immigration facility and BOP Policy has changed to where inmates became eligible for time reductions under the FSA despite their ICE detainer). Warden Neely kept assigning unit team to other duties and unit team issues were never resolved. Weekly open houses were frequently cancelled due to short-staffing and when held wait line started at 6am for open house commencing from 2-3pm. Less than half the people were able to see the counselor or case manager.

Subsequently, at the very first opportunity Warden Neely placed Plaintiff in the SHU with thirty (30) other inmates for unsubstantiated reasons. When Plaintiff was released without any incident reports she advised Warden Neely that her actions were illegal and that Plaintiff would be taking legal action and indented on reporting staff misconduct and abuse of power to Regional Director and Office of Inspector General. As a result, the following week, Warden Neely placed Plaintiff in the SHU on false allegation of assault when the other inmate was never taken to the SHU, against BOP Policy. There was no due process. This event was orchestrated by Warden Neely with the sole purpose of retaliation to Plaintiff exercising her First Amendment right, harassment, intimidation, intentional infliction of emotional distress; and to avoid any possibility of investigation or legal action against her. This was risk mitigating strategy done illegally- in retaliation to Plaintiff exercising her First Amendment Right.

It was held in Gomez v. Vernon, 255 F. 3d 1118 (9th Cir. 2001) that retaliation against one's right to access courts is in violation of the First Amendment and in Perez v. Gates, No. 13-cv-05359-VC, 2015 U.S. Dist. LEXIS 127009 (N.D. Cal. Sept. 22, 2015) the court held that retaliation against a prisoner for joining hunger strike and for writing was in violation of his constitutional rights and awarded $25,000.00 in damages. In Allah v. Seiverling, 229 F. 3d 220 (3rd Cir. 2000) court held that prison officials must NOT use transfers or segregation to restrict one's access to courts. Lastly, in Sigger-El. v. Barlow, 433 F. Supp. 2d 811 (E.D. Mich. 2000) a prisoner received $200,000.00 in punitive damages after he was transferred in retaliation to complaining to the Warden about a prison official who harassed the prisoner and refused to put in routine paperwork the prisoner needed to pay his appellate lawyer. The prisoner also received $19,000.00 in compensatory damages.

Plaintiff's case is factually similar to Siggers-El in that she was transferred in retaliation to exercising her First Amendment right, but Plaintiff's case is more egregious in that she was falsely imprisoned, held in the SHU for over 4.5 months in aggravated conditions, was negligently denied medical case, denied access to courts resulting in adverse outcome of her two IHP hearings, denied phone calls to her family and her father passed away while she was in the SHU. Intentional infliction of emotional distress in her case was much more severe.

FOOTNOTES p.1

---

*Plaintiff was recommended to be sent to FCI-Tallahassee at sentencing but was shipped to FCI-Aliceville despite judicial recommendation.
**Plaintiff spent six (6) years in FCI-Aliceville because she had ICE detainer and was told she could not apply for transfer despite her clear conduct
***this information is unverified. There were other rumors of embezzlement and other staff misconduct
****Warden Neely made personal degrading remarks to inmates, sent inmates to the SHU for various unsubstantiated reasons and not for violation of BOP Policy (e.g for their lipstick color, because they were laughing, because of the way their hair was done, or how they look at her), she frequently denied inmates meals and sent them back to the unit; placed restrictions on commissary items and quantity inmates could purchase because she said inmates were "fat", confiscated commissary-purchased items if there were too many in the locker, gave numerous unsubstantiated incident reports, restricted REC; harassed, degraded and intimidated inmates; instituted SHU policies that lead to death in custody).

*** Warden Neely was Removed From the compound due to staff misconduct last year, according to account by another inmate; unverified. (inmate anna BYRD)

## I TORTIOUS ACTIONS UNDER FEDERAL TORT CLAIMS ACT (FTCA)

Warden Neely was acting in the "course and scope of her employment" when the negligent acts were committed, and when she failed to act with the degree of care, skill, or diligence a reasonable person in her position would exercise. In Bolton v. United States, 347 F. Supp. 2d 1218 (N.D. Fla 2004) the court held that it does not matter if a guard is acting in the scope of their employment, as long as they are acting "under the color of federal law".

Because Bureau of Prisons has a duty of care under 18 U.S.C. Sec. 4042(a), negligent or intentional violations of that duty may be brought under the FTCA even if they are not provided in state law where the incident occurred. Supreme Court held in United States v. Muniz, 374 U.S. 150, 83 S. Ct. 1850, 10L Ed 2d 805, 1963 U.S. LEXIS 2412 (1963) that duty of care owed by Bureau of Prisons to federal prisoners is fixed by 18 U.S.C. Sec. 4042 independent of inconsistent state rules. See also Jones v. United States, 91 F. 3d 623-25 (3rd Cir. 1996); Luis v. Zang, 833 F. 3d 619, 626 (6th Cir. 2016).

Warden Neely's negligent and wrongful actions and omissions resulted in irreparable harm and injury to the Plaintiff in that she was falsely imprisoned, detained and transferred without due process and in retaliation, lost property and legal documents, suffered from negligent denial of medical care and deliberate infliction of emotional distress; her SHU detention and denial of access to courts adversely affected two IHP hearings as she was unable to litigate, respond or prepare for the hearings and her immigration case remained unresolved. Plaintiff is seeking monetary damages.

## FALSE IMPRISONMENT

On or about 4/14/2023 Warden Neely sent Plaintiff to the SHU for no substantiated reason, and not for violation of any BOP rule or policy. Plaintiff was released a week later without any incident reports. While in the SHU Plaintiff injured her back and was negligently denied medical care by Warden Neely. See "Statement of Facts by Affidavit" for more information on the issue. In Gittens v. New York, 504 N.Y.S. 2d 969 (Ct.ct. 1986) New York court held that a prisoner had a valid claim for false imprisonment because he was held in the SHU for nine (9) days beyond the last day of the penalty imposed, and the only reason given was "investigation". The prisoner in that case got no process whatsoever. Like in Gittens Plaintiff in the instant case got no process whatsoever and was wrongfully placed in the SHU. Because Plaintiff told Warden Neely that her actions were illegal and she was going to litigate and report abuse of power to the Office of Inspector General and Regional Director she placed Plaintiff in the SHU again the following week, on 4/29/23 on false allegations of assault, when the other inmate was never sent to the SHU, against BOP Policy. Plaintiff was held in the SHU on presumed "investigation" and passed the investigation period for 4.5 month, then was found "not guilty" and shipped to FCI-Dublin.

In both instances Plaintiff's placement in the SHU, on 4/14/2023 when she was released with no incident report, and on 4/29/2023 on false allegations, with no process and in violation of BOP Policy and Federal Law, constitutes FALSE IMPRISONMENT and actionable under FTCA.

In Limone v. United States, 497 F. Supp. 2d 143, 2007 U.S. Dist. LEXIS 54224 (D. Mass. 2007), aff'd 579 F. 3d 79, 2009 U.S. App. LEXIS 19239 (1st. Cir. 2009) the court awarded one million per year damages for FALSE IMPRISONMENT and emotional distress, stating that: "the discretionary function exception immunizes only the conduct of agents exercising judgment within their lawful discretion. No government actor has "discretion" to violate Constitution, Statutes, Regulations or rules that bind them".

In Plaintiff's case she received no process whatsoever when she was placed in the SHU on 4/14/2023 and the second time she was placed in the SHU on 4/29/2023 on false allegations when another inmates was never taken to the SHU, pursuant to Warden Neely's directions, in violations of BOP Policy and Federal Law and as it will be discussed in the second part of this brief in violation of the Fourteenth Amendment right. Her placement in the SHU served no penological objective and was done to intimidate, harass, retaliate and deter Plaintiff from her legal work- in violation of BOP Policy and Federal Law. While in the SHU Plaintiff was denied medical care, legal materials, access to phone, mail, law library, rec, inter alia, and suffered emotional distress due to torturous conditions in the SHU when inmates joined in hunger strike protesting inhumane conditions of confinement and due to her father's death.

Court of Appeals for the Fifth Circuit held in Simon v. United States, 711 F. 2d 740, 1983 U.S. App. LEXIS 24923 that "a defendant who intentionally brings about plaintiff's unlawful restraint against his will, and with his knowledge, is liable for false imprisonment. A Plaintiff may recover damages for loss of his time, physical discomfort, resulting illness or injury, mental suffering, humiliation, harm to reputation, interruption of business, loss of company of his family, and expenses incurred to vindicate himself."

In the instant case Plaintiff was completely cut off from any contact with her friends, family, associates on the compound and at home (no video visits, no mail, no phone calls are allowed in the SHU, except for one call every 30 days that Plaintiff was denied to make during the day); she was held in torturous conditions where inmates joined in hunger strike to protest inhumane conditions of confinement, she got injured while in the SHU and was denied medical care; Plaintiff suffered interruption of work, programming and her legal proceedings that resulted in adverse outcome in IHP hearings; she lost her good time; unsubstantiated placement in the SHU affected Plaintiff's classification and reputation in BOP and had adverse outcome in other motions for sentence reduction, due to consideration of 3553(a) factors. (SEE Exhibits B,C).

## ABUSE OF PROCESS

It was abuse of process for Warden Neely to place Plaintiff in the SHU on 4/14/23 for no substantiated reason and on 4/29/23 on false allegations of assault when the other inmate was never taken to the SHU for "investigation", against POB Policy. It was also abuse of process for Warden Neely to deny Plaintiff medical care, access to courts, REC, book cart, commissary with OTC Medication and stamps, and phone calls to family during day time.

## NEGLIGENT DENIAL OF MEDICAL CARE

On 4/14/23 after Warden Neely placed Plaintiff in the SHU Plaintiff injured her back. Warden Neely deliberately denied Plaintiff medical care. When Plaintiff explained Warden Neely that she was paralyzed waist down and it was medical emergency, Warden Neely told her staff "She does not need any medical care. Leave her there!". The second time Warden Neely placed Plaintiff in the SHU on 4/29/23 Plaintiff was denied medical care as Warden Neely suspended commissary with OTC Medication and stamps. BOP Policy is that medical won't prescribe medication that can be purchased on commissary. Plaintiff suffered from excruciating pain and was not able to buy pain killers and allergy pills she needed. Commissary with OTC medication was reinstated only in part after death by suicide on June 10th, 2023, and after Regional came down to investigate.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Warden Neely acted deliberately when she placed Plaintiff in the SHU for no reason and no violation of the BOP Policy on 4/23/2023. There was no penological reason for Plaintiff to be placed in the SHU, it was solely done in retaliation and with evil intent. Warden Neely denied plaintiff medical care with the same motive- to inflict emotional distress; to harass, degrade and intimidate Plaintiff. Second time Warden Neely placed Plaintiff in the SHU she denied inmates the most basic human needs, again, with sole intention to degrade, humiliate, torture, punish, intimidate, harass, and to inflict emotional distress. Plaintiff joined in peaceful hunger strike that was never reported and starved to death demanding legal materials, access to law library, rec, commissary with otc medication and stamps, book cart, supplies. Plaintiff asked for a day time phone call to her family in Ukraine. Due to war and her father's poor health she pleaded warden to allow her to call during the day time due to 8-10 hour difference in time. Warden Neely denied Plaintiff an opportunity to call during the day time and Plaintiff's father passed away on August 15, 2023. The amount of grief, suffering, pain and despair Plaintiff experienced can not be put into words. Worst yet, her detention was retaliatory and unwarranted- nothing but abuse of process, abuse of power, breach of official duty and intentional infliction of emotional distress by Warden Neely. ( SEE Exhibit C)

## BREACH OF OFFICIAL DUTY AND NO IMMUNITY

Warden Neely was acting under the color of state law and is in breach of her official duty. The breach of duty occurs at any time when prison officials violate Federal Law, BOP Policy or Constitutional rights. In Yosuf v. United States, 642 F. Supp. 415 (M.D. Pa 1986) BOP breached a duty to let a prisoner make legal calls to his attorney based on language from the Code of Federal Regulations. In the instant case Plaintiff was denied calls to her family, access to courts, adequate access to law library, REC, medical care, among other things discussed earlier, all in violation of BOP Policy, Federal Law and Constitutional rights.

Qualified immunity does not apply because Warden Neely was personally involved in violation of Plaintiff's constitutional rights, Federal Law and BOP Policy. She was the one who put the policies in place and instructed her staff to adhere to abusive and illegal practices. Restated, Warden Neely was acting intentionally and deliberately with full knowledge of harm and injury caused by her negligent and reckless behavior. See Saucier v. Kats, 533 U.S. 194 (2001), Harlow v. Fitzgerald, 457 U.S. 800 (1982), Taylor v. Rojas, 141 S. Ct. 52 (2020).

## LOSS OF PROPERTY

As a result of transfer Plaintiff's property was packed out and excess property was thrown out. More than half of her property was not accounted for, Plaintiff estimates to be valued at $2,500.00. Plaintiff never filed a tort claim for property loss because the property is always labeled as "unsecured" even though it was "secured", leading to automatic denial of her claim under Title 31 U.S.C. Sec. 3721(a)(1), 3723; dollar value of the items is based on depreciated value and not "market value" and constitutes a far departure of what lost items were actually worth, income that could be derived from lost items (i.e. arts and crafts) is not accounted for, many items were gifted or traded which is a common practice and had no receipts, other items had sentimental value like Plaintiff's family pictures and pictures and letters from her father who passed away. Plaintiff accrued other expenses related to transfer as she had to buy clothes, shoes, food and hygiene items upon her arrival at FCI-Dublin. It took nearly six (6) weeks to receive her property. Lastly, legal materials were not shipped from the SHU and were sent to her to FDC-Miami where she was transferred due to FCI-Dublin's closure eight (8) months later. Plaintiff asks to consider awarding compensatory damages due to property loss.

## II VIOLATION OF CONSTITUTIONAL RIGHTS: ACTIONABLE UNDER BIVENS

This Court has discretion to construe this motion as Bivens action based on violation of Plaintiff's constitutional rights guaranteed under the First, Fifth, Eighth, and Fourteenth Amendments to the Constitution.

VIOLATION OF THE FIRST AMENDMENT RIGHT AND FIFTH AMENDMENT "DUE PROCESS" RIGHT.

First Amendment right, freedom of speech and association, includes the right to read books and magazines, the right to call or write one's family and friends. While in the SHU Warden Neely took away book cart and cancelled commissary with OTC medication and stamps (reinstating it later and only in part after the death of an inmate due to suicide on June 10th, 2023), depriving Plaintiff to write letters and read books, in violation of the First Amendment. The right to send mail is protected under the First Amendment, see Procunier v. Martinez, 416 U.S. 396 (1974); Supreme Court held the same in Turner v. Safley, 482 U.S. 78 (1987) and Thornburgh v. Abbott, 490 U.S. 401 (1989) (invoking First Amendment right to have reading materials).
DEPRIVATION OF READING MATERIALS AND STAMPS TO SEND MAIL was also in violation of the Fourteenth Amendment's "equal protection clause" and BOP Policy as all other BOP prisons permit inmates to purchase stamps, to write and send letters, and to have reading materials while in the SHU. First Amendment also entails the right to access courts.

In granting prisoner's First Amendment claim in Al-Amin v. Smith, 511 F. 3d 1317 (11th Cir. 2008) Eleventh Circuit reiterated Supreme Court's holding that "prisoners have constitutional right of access to courts", citing Bounds v. Smith, 430 U.S. 817, 821, 97 S. Ct. 1491, 1494, 52 L. Ed. 2d 72 (1977), it continued that: "The First Amendment, as incorporated by the Fourteenth Amendment, prohibits states from 'abridging the freedom of speech' US Const. Amendment I. MAIL is ONE MEDIUM OF FREE SPEECH, and the right to SEND and RECEIVED MAIL exists under the First Amendment. See City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 427, 113 S. Ct. 1505, 1515-1516, 123 L. Ed. 2d 99 (1993) ("A prohibition on the use of the mails is a significant restriction of First Amendment rights. We have noted that the United States may give up the Post Office when it sees fit, but while it carries it on the use of the mail is as much a part of free speech as the right to use our tongues". (quoting Blount v. Rizzi, 400 U.S. 410, 416, 91 S. Ct. 423, 428, 27 L. Ed. 2d 498 (1971)). Further it is well established that a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system Pell v. Procunier, 417 U.S. 817, 822, 94 S. Ct. 2800, 2804, 41 L. Ed. 2d 495 (1974); See Turner, 482 US at 95, 107 S. Ct. at 2255; Hudson v. Palmer, 468 U.S. 517, 523 104 S. Ct. 3194, 3198, 82 L. Ed. 2d 393 (1984); Lawson, 85 F. 3d at 509 (same)".
In the instant case Warden Neely took away SHU commissary with stamps and OTC medication, depriving Plaintiff the ability to send and received mail, and in violation of her First Amendment right; Fourteenth Amendment "equality under the Law" clause and Fifth Amendment "Due Process" Right.
This Circuit relied on third circuit decision in Jones, 461 F. 3d at 359-60 in that NO SHOWING OF INJURY IS REQUIRED IN freedom of speech claim that extends to sending and receiving mail, explaining that "protection of an inmate's freedom to engage in protected communications is a constitutional end in itself."

VIOLATION OF THE RIGHT TO ACCESS COURTS UNDER THE FIRST AMENDMENT, FIFTH, AND FOURTEENTH AMENDMENTS "DUE PROCESS" CLAUSE, and OTHERWISE

The right to access courts is protected under the First, Fifth and Fourteenth Amendments to the Constitution. Under the First Amendment Plaintiff has the right to "petition the government for a redress of grievances" and under the Fifth and Fourteenth Amendments she has a right to "due process of law". Plaintiff's right to access courts was violated when Warden Neely placed Plaintiff in the SHU for unsubstantiated reason and on false allegations and in retaliation. While in the SHU Plaintiff was denied access to her legal materials for over one hundred (100) days, and when her legal materials were given it was only a portion of what she had in her property and none from her legal locker that remained on the unit. (After numerous requests for her legal materials property Officer Ms. Hinton told the Plaintiff that Warden Neely instructed her not to give any property, stamps or documents to inmates, inclusive of legal materials, she said "Warden said you can't have nothing"); Plaintiff was denied adequate access to law library and legal calls -all during pending IHP (immigration) hearings. (See EXHIBIT B). Plaintiff has been requesting Immigration court to schedule an IHP hearing for over two years in order to resolve her ICE detainer. She was unable to prepare, respond or litigate her case, or have access to needed counsel. IHP hearings were adjourned. After Plaintiff was shipped to FCI Dublin (where IHP hearings are NOT held) she was unable to resume and conclude her immigration case, it remained unresolved pending her release from prison. Plaintiff is facing additional time in ICE custody because her immigration case was never concluded at the IHP hearing in FCI Aliceville due to her detention in the SHU and denial of her right to access courts by Warden Neely. In addition to that Plaintiff was denied copies of legal documents, forms that were only given in part; the grievance and tort claim forms Plaintiff mailed went "missing". The legal materials inclusive IHP hearing documents Plaintiff had in her cell were never shipped to her to FCI Dublin. She later received them in FDC-Miami, where she was transferred due to FCI-Dublin's closure eight (8) months later. (SEE EXHIBIT B)
Supreme Court established that prisoners have a fundamental right to access courts in Ex parte Hull, 312 U.S. (1941), Johnson v. Avery, 383 U.S. 483 (1969), and Bounds v. Smith, 430 U.S. 817 (1977). A right to talk to a lawyer is in violation of

First Amendment right and not subject to "actual-injury" requirement. Al-Amin v. Smith, 511 F. 3d 1317 (11th Cir. 2008). In Trujillo v. Williams, 465 F. 3d 1210 (10th Cir. 2006) and Marange v. Fortenot, 879 F. Supp. 679 (E.D. Tex. 1995) courts have held that prisoners who cannot visit law library because they are in disciplinary segregation or other extra-restrictive conditions must have meaningful access to courts some other way. The Ninth Circuit held that denial of law library access due to lockdown was in violation of prisoner's constitutional right in Hebbe v. Plier, 627 F. 3d 338 (9th Cir. 2010).

## VIOLATION OF THE EIGHTH AMENDMENT RIGHT

Eighth Amendment forbids "cruel and unusual punishment" and conditions that are overly restrictive, unsanitary and dangerous; it also protects the right to medical care. Prison officials violate the Eighth Amendment when they act with deliberate indifference to a prison condition that exposes a prisoner to an unreasonable risk of serious harm or deprives a prisoner of a basic human need. Farmer v. Brennan, 511 U.S. 825 (1994). To succeed on the Eighth Amendment claim one has to demonstrate that prison officials acted with "deliberate indifference" Wilson v. Seiter, 501 U.S. 294 (1991).

In the instant case Warden Neely knew of the issues as they were communicated to her by Plaintiff and nearly all inmates held in the SHU (Warden Neely refused to take paper cop-out from inmates and grievance forms were not available). Additionally, Warden Neely was the CAUSE of violation of prisoners' rights as she was the one who put the policies in place and instructed her stuff to adhere to illegal and abusive practices. Not only Warden Neely ignored verbal requests but also she ignored inmates refusing meals in peaceful protest demanding legal materials, access to law library, rec, book cart, supplies, commissary with OTC medication and stamps. Hunger strike went unreported to Regional Director. Warden Neely knowingly and deliberately ignored Plaintiff's request for urgent to medical care telling her staff: "she does not need any medical. Leave her there!". All of the enumerated issues constitute constitutional rights violations:

**DEPRIVATION OF EXERCISE** was found to violate Eighth Amendment in Keenan v. Hall, 83 F. 3d 1083, 1089 (9th Cir. 1996); other courts held that prisons must provide prisoners with opportunities to exercise outside their cells in Delaney v. Detella, 256 F. 3d 679 (7th Cir. 2001) and Hearns v. Tehrune, 413 F. 3d 1036 (9th Cir. 2005).

**DEPRIVATION OF PERSONAL HYGIENE ITEMS AND UNSANITARY CONDITIONS** was found to violate Eighth Amendment in Gillis v. Litscher, 468 F. 3d 488 (7th Cir. 2006) (denial of mattress, bedding, clothing, soap); Womble v. Chrisman, 770 F. App'x 918, 925 (10th Cir. 2019) (denial of clean toilets and shower); Fountain v, Rupent, 819 F. App'x 215, 219 (5th Cir. 2020) (unsanitary conditions and inadequate nutrition); same held by Supreme Court in Taylor v. Riojas, 141 S. Ct 52 (2020) (awarding monetary damages to a prisoner held in a cell covered in feces for just a few days in violation of the Eighth Amendment).

**SLEEP DEPRIVATION** was held to violate Eighth Amendment in Walker v. Schalt, 717 F. 3d 119 (2nd Cir. 2013). In Plaintiff's case sleep deprivation was a result of overcrowding (SHU was at full capacity), inmates being denied books, rec and commissary with stamps and OTC medication. Inmates were constantly banging on steel cell doors demanding these things and mental health issues escalated due to inhumane and torturous conditions of confinement resulting in increased noise levels and deprivation of sleep.

**DEPRIVATION OF MEDICAL CARE VIOLATES EIGHTH AMENDMENT RIGHT** *Supreme Court held that 8th Amendment inadequate medical care is actionable under Bivens in Carlson v. Green, 446 US 14, 17-19 (1980)*

The Constitution guarantees prisoners right to medical care. The Supreme Court explained this is because: "an inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met". Estelle v. Gamble, 429 U.S. 97, 103 (1976).

In the instant case not only Plaintiff was denied medical care by Warden Neely but also Warden Neely was the reason Plaintiff got injured- she was placed in the SHU for unsubstantiated reason (her sunglasses) that did not violate any BOP Policy, she was released a week later with no incident reports in near-death condition. During her consequent detention on false allegations and in retaliation by Warden Neely, Plaintiff was denied medical care by Warden Neely along with all other inmates as Warden Neely cancelled commissary with OTC Medication. BOP policy is that medication will not be prescribed by medical provider if it can be purchased on commissary. Plaintiff suffered excruciating pain, sleep deprivation and emotional distress during her detention in the SHU as she was unable to buy pain killers and allergy pills on commissary and medical would not prescribe it. Warden Neely was aware of that policy and took away commissary with sole intention to deliberately inflict emotional distress on inmates held in the SHU with complete disregard to their medical needs.

## EIGHTH AMENDMENT -SERIOUS MEDICAL NEED

Courts generally agree that the existence of a serious medical need depends on the facts surrounding each person. See Smith v. Carpenter, 316 F. 3d 178 (2nd Cir. 2003) (holding that a condition may not be serious medical need in one situation but could be serious medical need in another). In Plaintiff's case while her paralysis was not deadly in itself her debilitating condition deprived her of ability to eat or sleep, and could have grave consequences. She experienced excruciating pain and had no access to pain killers, allergy pills or any of her medication. In Brock v. Wright, 315 F. 3d 158 (2nd Cir. 2003) the court held that to be considered a serious medical need the condition has to "affect daily activities" and be distinguished by "chronic and

serious pain" and this is exactly what Plaintiff experienced when she was paralyzed waist down: she was unable to move, eat, or sleep due to excruciating pain- it affected her daily activities, and her back pain was a "chronic condition"- a result of a documented injury she sustained in prison.

Serious medical need constitutes not only physical, dental but also mental health. Edmo v. Corizon, Inc., 935 F. 3dd 757, 785 (9th Cir. 2019). Risk of suicide applicable in Plaintiff's case was considered a "serious medical need" for the purposes of the Eighth Amendment in Estate of Cole by Pardue v. Fromm, 94 F. 3d 254 (7th Cir. 1996), Gregorie v. Class, 236 F. 3d 413 (8th Cir. 2000). In the SHU there was no mental health treatment. Psychology staff would come and give out puzzles (2 pages) to those who were suicidal. This Circuit held that a serious medical need is "one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention" Hill v. Dekalb Reg'l Youth Det. Ctr, 40 F. 3d 1176, 1187 (11th Cir. 1994); Youmans v. Gagnon, 626 F. 3d 557 (11th Cir. 2010). Mental health is a serious medical need that was so obvious in the SHU detention that it could be easily recognized by repeated suicide attempts, yet no mental health treatment was offered to anyone, upon numerous requests, ultimately resulting in death by suicide on June 10th, 2023. Plaintiff witnessed two suicide attempts and one death by suicide affecting her mental health; additionally she was affected by the same inhumane and torturous living conditions in deprivation of the most basic human needs.

This Circuit agrees that the right to adequate medical care also includes a "right to psychiatric and mental health care, and a right to be protected from self-inflicted injuries, including suicide" Blecher v. City of Foley, Ala., 30 F. 3d 1390, 1396 (11th Cir. 1994); other courts recognize the same see Gibson v. County of Washoe, 290 F. 3d 1175, 1187 (9th Cir. 2002), Clark Murphy Foreback, 439 F. 3d 280, 292 (6th Cir. 2006) and Meriwether v. Faulkner, 821 F. 2d 408, 413 (7th Cir. 1987). Plaintiff never received any mental health care after numerous requests and after her father's death in violation of her 8th Amendment right.

EIGTH AMENDMENT - DELIBERATE INDIFFERENCE

To succeed on the Eighth Amendment claim one must demonstrate that prison officials knew of the issue and failed to respond reasonably to it. Estelle, 429 U.S. at 104, Gutierrez v. Peteres, 111 F. 3d 1364 (7th Cir. 1997). Restated, Warden Neely was aware of all the issues, she was the one who put the policy in place and instructed her staff to adhere to illegal and abusive practices. She acted deliberately, negligently with complete disregard to Plaintiff's serious medical needs. When Plaintiff asked for medical care, Warden Neely told her staff "she does not need any medical care. Leave her there!", constituting deliberate indifference to Plaintiff's medical needs. When commissary was taken away with OTC medication Warden Neely knew inmates could not buy medication and medical would not prescribe medication inmates could buy on commissary.

DELAYED MEDICAL CARE IS DELIBERATE INDIFFERENCE UNDER THE EIGHTH AMENDMENT

It is a case of deliberate indifference when medical care is delayed like in Plaintiff's case when she was paralyzed waist down. Grieveson v. Anderson, 538 F. 3d 763, 779 (7th Cir. 2008) (1.5 day delay in treating broken nose); Smith v. Knox Cnty Jail, 666 F. 3d 1037 (7th Cir. 2012) (5 day delay providing emergency medical care); or when it is not provided at all like in Plaintiff's case when she needed mental health care Scott v. Ambani, 577 F. 3d 642 (6th Cir. 2009); Spruill v. Gillis, 372 F. 3d 219 (3rd Cir. 2004); Meloy v. Bachmeier, 302 F. 3d 845 (8th Cir. 2002).

> An official also acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening or urgent medical condition that would be exacerbated by delay. See Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187-88 (11th Cir. 1994), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); see also Harris v. Coweta Cnty., 21 F.3d 388, 394 (11th Cir. 1994). Delay in access to medical {2020 U.S. Dist. LEXIS 27} treatment can violate the Eighth Amendment when it is "tantamount to unnecessary and wanton infliction of pain." Brown v. Hughes, 894 F.2d 1533, 1537-38 (11th Cir. 1990) (citations and internal quotation marks omitted).

FOURTEETH AMENDMENT VIOLATIONS AND FIFTH AMENDMENT "DUE PROCESS" VIOLATIONS.

The Due Process Clause of the Fourteenth and Fifth Amendment prohibits a state from depriving "any person of life, liberty or property without DUE PROCESS OF LAW". Plaintiff's placement in the SHU was without due process, it was unsubstantiated, done in retaliation to Plaintiff exercising her First Amendment right, freedom of speech, when making inquiries about relevant issues that pertained to her detention. Supreme Court case in Sandin v. Conner, 515 U.S. 472 (1995) established a standard when Fourteenth Amendment due process applies: to discipline that makes a prisoner's time in prison longer or treatment that leads to an "atypical and significant hardship on the prisoner in relation to the ordinary incidents of prison life". In the instant case Plaintiff's detention resulted in good time taken and her detention was "atypical and significant" under Sandin standard.

Second circuit held that 188 days in solitary confinement is severe enough to create a liberty interest in J.S. v. T'Kach, 714 F. 3d 99 (2nd Cir. 2013).

On 4/14/2023 when Plaintiff was placed in the SHU by Warden Neely due to her sunglasses worn on top of her institutional t-shirt, the detention was "atypical and significant" in that she did not violate any BOP Policy, she was released without any incident reports one week later; while in the SHU she injured her back, was paralyzed waist down and was denied medical

care, access to courts, was deprived of sleep and could not eat. The second time she was placed in the SHU by Warden Neely on 4/29/23 on false allegations of "assault" when the other inmate was never placed in the SHU, further investigation revealed Plaintiff was not guilty; she was told by SIS, Mr. Orr, that he "sent an e-mail to DHO to expunge the record" but Plaintiff never got to see DHO after the initial hearing; she remained in the SHU for 4.5 month, past the "investigation" period and was then shipped to FCI Dublin. The record was never expunged and good time was taken. Plaintiff's detention was not only "atypical and significant" but also good time was taken. In Edwards v. Balisok, 520 U.S. 641 (1997) prisoner challenged the conduct of DHO as to exculpatory evidence and was successful in his Fourteenth Amendment due process claim.

FALSE IMPRISONMENT RISES TO THE FOURTEENTH AMENDMENT VIOLATION

Eleventh Circuit held in Cannon v. Macon Cnty, F. 3d 1558, 1563 (11th Cir. 1993) in granting inmate's false imprisonment claim and reversing decision of the lower court that a "detainee has a constitutional right to be free from continued detention and FALSE IMPRISONMENT claim rises to the level of liberty deprivation under Fourteenth Amendment", citing Douthit v. Jones, 619 F. 2d 527 (5th Cir. 1980) (granting plaintiff's claim based on detention for 30 days beyond the expiration of the Plaintiff's sentence); and holding that the constitutional right to be free from continued detention after it was or should have been known that the detainee was entitled to release has been recognized in other circuits as well. See Sivard v. Pulaski County, 959 F. 2d 662 (7th Cir. 1992) (continued detention claim under Sec. 1983 for due process violation); Sanders v. English, 950 F. 2d 1152 (5th Cir. 1992) (failure to release due to misidentification gives rise to cause of action under Sec. 1983).

In Braxton v. Carlson, 483 F. 2d 938, 1973 U.S. App. LEXIS 8174 (3rd Cir. 1973) court found that even in the case of appellant's confined in punitive segregation for 5 days, a due process hearing would be constitutionally required; same in Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 935, 1974 U.S. LEXIS 91 (1974).

CONDITIONS IN THE SHU

While in the SHU Plaintiff was deprived of the most basic human needs: toilet paper, soap, pads, tampons, razors, and shampoo packets that ran out due to increased number of people placed in the SHU for various unsubstantiated reasons by Warden Neely. Lack of basic hygiene products in turn created unsanitary living conditions: smells, feces; inmates flooding toilets in protest to inhumane conditions of confinement. Book cart, commissary with OTC Medication and stamps were taken away by Warden Neely. Plaintiff was unable to buy painkillers, allergy pills she needed and stamps to write letters. There was no REC. Plaintiff was denied her legal materials for over 100 days, adequate access to law library, depriving her of her right to access courts. Plaintiff was damaged in that she had two IHP (immigration) hearings and was unable to prepare, it affected her eligibility for halfway houses and she is now facing additional time in ICE custody.
In peaceful protest, Plaintiff was refusing meals along with other inmates for over a week, demanding legal materials, books, commissary and REC. Requests were ignored and HUMGER STRIKE was never reported to Regional by Warden Neely. Suicide attempts followed resulting in one death by suicide on June 10th, 2023. Plaintiff was denied permission for DAY-TIME phone call, permitted every 30 days, to her family overseas. On Aug. 15th, 2024 Plaintiff's father passed away. Chaplain came to make one phone call AFTER her father's death, with her hands in handcuffs behind her back and the call cut to 15 minutes, per "policy". After witnessing two suicide attempts, one death by suicide, and her father's death, Plaintiff became suicidal and would have killed herself if DHO was not cancelled and she was not shipped that week to FCI-Dublin. To this day she experiences severe psychological trauma and PTSD related to SHU detention in FCI Aliceville. Plaintiff was prescribed mental health medication and she continues to take it to help her cope with SHU-related trauma and PTSD.
Such egregious acts of negligence, abuse of power, inhumane conditions of confinement in deprivation of the most basic human needs and intentional infliction of emotional distress is nothing short of "atypical and significant" under Sandin standard. In Palmer v. Richards, 364 F. 3d 60 (2nd Cir. 2004) a court held that 77 days under aggravated conditions could be "atypical and significant". Same short placement in the SHU was considered "atypical and significant" and in violation of the Fourteenth Amendment in Gillis v. Litscher, 468 F. 3d 495 (7th Cir. 2006) and Mitchell v. Horn, 318 F. 3d 523 (3rd Cir. 2003). Plaintiff was denied due process guaranteed under the Fourteenth Amendment, see Wolff v. McDonnell, 418 U.S. 539 (1974).
Lastly, Plaintiff's unsubstantiated detention in the SHU was in violation of the Fourteenth Amendment "equal protection clause" as other BOP prisons provide REC, law library access, commissary with OTC medication and stamps, personal hygiene items, book cart and accommodate for 1 day time phone calls during SHU detention. Lastly, the policies instituted by Warden Neely were in violation of the Fourteenth Amendment, BOP Policy and Federal Law, and Fifth Amendmend "due process" clause. Supreme Court held that 5th Amendment due process claims are actionable under Bivens in Davis v. Passman, 442 U.S. 228, 248-249 (1979) like in the instant case here.
VIOLATION OF CONSTITUTIONAL RIGHT IS AN INJURY IN ITSELF

While it is clear that Plaintiff suffered irreparable harm and injury due to deliberate and negligent actions and acts of omission by Warden Neely: denial of medical care, denial of access to courts that resulted in adverse outcome of her two IHP hearings, retaliatory and unsubstantiated detention in the SHU and transfer, loss of property and income, intentional infliction of emotional distress, inter alia, the showing of an injury is not required as violation of constitutional right is an injury in itself. See King v. Zamira, 788 F. 3d 207, 213 (6th Cir. 2015), Aref v. Lynch, 833 F. 3d 242 (D.C. Cir. 2016); Canell v. Lightner, 143 F. 3d 1210 (9th Cir. 1998); Robinson v. Page, 170 F. 3d 747 (7th Cir. 1999); Thomson v. Carter, 284 F. 3d 411 (2nd Cir. 2002); Cockroft v.

Kirkland, 548 F. Supp. 2d 767 (W.D. Cal. 2008). In Siggers-El v. Barlow, 433 F. Supp. 2d 811, 816 (E.D. Mich. 2006) it was held that "First Amendment violations rarely, if ever result in physical injuries, construction of the PLRA against recovery of damages would defeat congressional intent and render constitutional protections meaningless if Sec. 1997e(2) is applied to foreclose recovery in First Amendment actions, it would place the First Amendment on 'shaky ground'".

Eleventh Circuit held that NO SHOWING OF INJURY is required if Plaintiff establishes a violation of fundamental constitutional right in Al-Amin v. Smith, 511 F. 3d 1317 (11th Cir. 2008); KH Outdoor, LLC v. City of Trussville, 465 F. 3d 1256, 1260 (11th Cir. 2006), quoting Hughes v. Lott, 350 F. 3d 1157, 1162 (11th Cir. 2003); Carey v. Piphus, 435 U.S. 247, 266-67, 98 S. Ct. 1042, 1053-54, 55 L. Ed. 2d 252 (1978) (damages awarded for procedural due process violations ABSENT proof of actual injury).

## TOTALITY OF CIRCUMSTANCES

While one violation of constitutional right might not rise to the level actionable under Bivens combination of factors considered together would. Plaintiff is asking to consider TOTALITY OF CIRCUMSTANCES in the instant case. See Palmer v. Johnson, 193 F. 3d 346 (5th Cir. 1999), Wilson v. Seiter, 501 U.S. 294 (1991).

## DAMAGES UNDER RICO ACT, 18 U.S.C. Sec. 1961-1968

Defendants violated civil RICO Act, 18 U.S.C. Sec. 1961-1968, by conspiring to commit and committing overt acts. The Racketeer Influenced and Corrupt Organizations Act "RICO" allows a private citizen to recover damages for conduct of an enterprise or individual through a patters of racketeering activity. RICO Act makes it criminal "to conduct" an "enterprise's affairs through a pattern of racketeering activity", 18 U.S.C. Sec. 1962, defined as behavior that violates certain other laws, either enumerated federal statutes or state laws. Plaintiff alleges violation on 18 U.S.C. Sec. 1512 tempering with a witness, victim, or an informant, 18 U.S.C. Sec. 1513 relating to RETALIATING against a witness, victim, or an informant in that Warden Neely placed Plaintiff in the SHU in retaliation to her exercising her First Amendment right and to avoid any further investigation, reporting or litigation pertaining to Warden Neely's illegal activity; 18 U.S.C. 1581-1592, unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor in that Plaintiff was falsely imprisoned and illegally detained in the SHU by Warden Neely; 1952 racketeering, (D) any offense involving fraud; and otherwise.

Both Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. Sec. 1961 et seq.) and Clayton Act (15 U.S.C. Sec. 15b) share common congressional objective of encouraging civil litigation to supplement government efforts to deter and penalize prohibited practices; object of civil RICO actions is thus not merely to compensate victims, but to turn them into prosecutors dedicated to eliminate racketeering activity. Rotella v. Wood, 528 U.S. 549, 120 S. Ct. 1075, 145 L. Ed. 2d 1047, 13 Fla. (2000). In that case Supreme Court held, inter alia, that a patient who was held in psychiatric facility longer than necessary was actionable under RICO. In the instant case, Plaintiff was placed in the SHU on two occasions without due process and in retaliation and suffered injuries and damages, actionable under RICO. And Warden Neely, has committed a patters of activities that violated FBOP Policy, Federal and State law and were illegal in nature. Warden Neely's illegal actions were the cause of Plaintiff's injury and damages, actionable under RICO.

## PRAYER FOR RELIEF

Wherefore now, above premises considered, Plaintiff is asking to remedy irreparable harm she suffered due to negligent acts and acts by omission by Warden Neely who was acting under the color of law in the course and scope of her employment, resulting in false imprisonment, abuse of process, retaliatory detention and transfer, negligent denial of medical care, intentional infliction of emotional distress to the Plaintiff, actionable under FTCA. Plaintiff is asking this court to award one million dollars ($1,000,000.00) in compensatory damages.

In the alternative, Plaintiff is asking this Court to award PUNITIVE damages under Bivens due to Constitutional rights violations, in the same amount, one million dollars ($1,000,000.00); and to award attorney fees if one is appointed.

## DISPERSEMENT OF FUNDS

In case monetary damages are awarded, Plaintiff asks that this court orders to hold the funds in escrow account with the appointed attorney pending instructions to donate funds to a non-for profit organization, designated by Julia Teryaeva-Reed, as authorized agent and representative in behalf of JULIA TERYAEVA-REED, Ens Legis; Julia Teryaeva-Reed is also a grantor and sole beneficiary of JULIA TERYAEVA-REED Cesti Qui Vie Trust.

Plaintiff reserves the right to amend this complaint and asks this court to construe this claim liberally in light of Haines v. Kerner, 04 US 519, 520-521 92 S. Ct. 594, 30 L. Ed. 2s 652 (1972) holding that pro se litigants are to be held to a lesser standard of review than lawyers who are formerly trained in law and are entitled to liberal construction of their pleading.

Plaintiff is asking for leave to amend if this court requires additional evidence as to any issues presented.

Respectfully Submitted,

Date: July 29th, 2024

By: _____
Julia Teryaeva-Reed
Without Prejudice, All Rights Reserved

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to the alleged on information and belief, as to those, I believe them to be true. I certify under the penalty of perjury that the foregoing is true, correct and complete to the best of my knowledge and belief.

Date: July 29th, 2024

By: _____
Julia Teryaeva-Reed
Without Prejudice, All Rights Reserved

## CERTIFICATE OF SERVICE

I, Julia Teryaeva-Reed, certify under the penalty of perjury under the laws of the United States of America that the foregoing is true, correct and complete to the best of my knowledge and belief and that CLAIM FOR MONETARY DAMAGES UNDER FTCA was mailed to the United States District Court for the Northern District of Alabama at 1729 Fifth Ave N. Room 140, Birmingham, AL 35203-2000 on this 29th day of July, 2024 via first class mail postage prepaid.

USPS Certified Mail # 9589 0710 5270 0957 4144 45

Date: July 29th, 2024

By: _____
Julia Teryaeva-Reed
Without Prejudice, All Rights Reserved

Attached: EXHIBIT A (proof of exhaustion, SF-95 and supporting Affidavit)
EXHIBIT B (IHP Hearings/other proof of injury)
EXHIBIT C (death certificate)

I, Julia Teryaeva-Reed, hereby certify under the penalty of perjury under the laws of the United States of America that a copy of the foregoing complaint was mailed to:

United States Attorney General
950 Pennsylvania Ave Suite 11000
Washington, DC 20530
USPS Certified Mail # 9589 0710 5270 0957 4144 14

Bureau of Prisons
Colette S. Peters, Director
320 First St NW
Washington, DC 20534
USPS Certified Mail # 7011 3500 0001 4672 1105

## STATEMENT OF FACTS BY AFFIDAVIT

I, Julia Teryaeva-Reed, hereby state and declare under the penalty of perjury under the laws of the United States of America that the following is true, correct and complete, and not meant to mislead, to the best of my knowledge and belief. I state as follows:

1. On or about 4/14/2023 while waiting in medical on my appointed date and time, and not out of bounds, I was approached by Warden Neely who confiscated my sunglasses. The sunglasses were worn on top of my institutional t-shirt, in the proper manner, in accordance with the BOP Policy that was in place since my arrival at FCI Aliceville in 2017. No official notices were given to general population of change in policy. Warden Neely stormed out of medical with my commissary-purchased sunglasses she took for no substantiated reason or explanation.

2. During the move I came out of medical with the rest of inmates and headed back to my unit. Warden Neely was standing on the sidewalk with AW Turner. I asked AW Turner to speak to Warden Neely. She was on the cell phone and I stood about five (5) feet away to allow her privacy of conversation and was waiting politely and patiently without interrupting her. When she got off the phone she yelled: "GO TO THE SHU!" (SHU stands for Special Housing Unit). I did not say one word to her and did not violate any BOP Policy to be sent to the SHU. Lieutenant Love took me to the SHU. I told Lietenant Love I did not do anything wrong to go to the SHU, he responded "you know how she is" referring to Warden Neely. All I knew at this point was that Warden Neely was unstable and not competent to perform her duties.

3. I was processed and stayed in the SHU for one week from 4/14/2023 till 4/21/2023. I was released without any disciplinary reports, my property was not returned to me and I never received the sunglasses back.

4. While in the SHU I injured my back and got paralyzed from waist down, unable to sleep, eat or move because of the excruciating pain. I denied meals and sat in one position on the floor next to the toilet, day and night, for the entire seven days. I was not given bottom bunk. I asked the correctional officers who do the rounds and the nurse who routinely gives out medication that it was medical emergency and that I was paralyzed from waist down and needed to be seen. My requests were initially ignored. When Warden Neely did rounds I told her that I was paralyzed, I could not move, I could not eat or sleep and that it was medical emergency and I needed to be seen by the doctor or taken to medical immediately. In response, Warden Neely told the staff: "She does not need any medical, leave her there!" and walked away. Warden Neely was informed of my near death condition and chose to ignore it, instructing her staff not to provide medical care. It was clearly an act of negligence, breach of official duty, abuse of power and deliberate infliction of emotional distress.

5. On the day of my release I was given steroid medication by medical and was able to walk back to the unit. I was prescribed Prednisone. While it had immediate effect and allowed me to walk, my pain level barely subsided. I stayed very sick without opportunity to see medical again because I could barely walk and in order to put a sick call request one has to walk to medical.

6. During my detention in the SHU in addition to being denied medical care by Warden Neely I was denied access to phone, e-mail, law library, and my legal materials during pending legal and immigration proceedings that resulted in irreparable harm, prolonged detention and inability to timely reschedule biometrics hearing (restarting the process requires additional 6 months and $600 application fee). My refusals to eat were ignored and never reported to Regional.

7. I was placed in the SHU for one week without ANY reason whatsoever, and suffered mentally, emotionally and physically as a result of Warden Neely's actions, deliberate indifference, negligence and failure to exercise due care.

8. On or about 4/29/2023 I was placed in the SHU again by Warden Neely on false allegations of assault. Warden Neely stated "I WILL GET YOU!" and instructed to put me in the SHU. During my detention, as per Warden Neely's directives, I was denied access to ANY of my legal materials, denied adequate access to law library; there was NO REC, commissary (with OTC medicatons and stamps) was cancelled, personal hygiene items ran out due to number of people in the SHU; we had no toilet paper, shampoo, or soap; book cart was taken away. Inmates, including myself, were refusing their food trays in peaceful protest for almost a week demanding REC, Commissary and Books. We were denied grievance forms, or any forms for that matter, and issues were not reported to Regional. REC records were falsified. As a result I personally witnessed 2 suicide attempts and one death in custody (two cells down from where I was housed).

Because of war in Ukraine and my father's poor health I've been asking for a phone call during the day, allowed every 30 days. When Warden Neely was doing rounds I explained to her that phone is brought only in the evenings after Mainline, around 6-7pm, and it is 2-3am in Ukraine and Russia and I am unable to call my family. She responded "Well, your family better wake up then. You are not getting any day calls!" and walked away.

9. On or about 8/15/2023 I received a letter that my father passed away while I was in the SHU. I was unable to call my family even though one phone call is permitted every thirty days and exceptions are always made depending in individual circumstances. Several weeks after my father's death the Chaplain came to make one phone call, my hands were in handcuffs behind my back and the call was cut at 15 minutes.

10. The second time I remained in the SHU for almost 4.5 months, from 4/29/24 till mid September, 2024. I was there the entire summer plus the month of May and half month of September without outdoor rec in a 6x9 cells where inmates were literally suffocating because the doors never opened and we were fed through the slots. After witnessing two suicide attempts, one death by suicide and my father's death I became suicidal. I wanted to kill myself when my bunkmate went to DHO but DHO got cancelled and I got shipped to FCI Dublin, CA.

11. In the end of March-beginning of April, 2024 I was interviewed by FBI agent as to Warden Neely's policies, management, SHU detention resulting in death in custody. I shared all known information.

12. In addition to all pain, suffering and psychological trauma the unsubstantiated SHU detention resulted in my IHP hearings being rescheduled and never finalized. I had two (2) immigration hearing while in the SHU and because I was denied access to courts I was unable to properly prepare for the hearings. No accommodations were given. Adequate law library access was denied; when permitted to go for 30 minutes the day before the hearing the law library did not have a working typewriter or printer. I was denied stamps and my legal materials for over 100 days.

13. I was told that it took so long to ship me because investigation was not completed and paperwork was not submitted correctly by FCI Aliceville staff, resulting in multiple denials of my transfer by Regional. My transfer was retaliatory and not substantiated. There was no due process.

Date: 6/12/2024                                          By:_____
                                                              Julia Teryaeva-Reed

*Without Prejudice*
*All Rights Reserved*

I affirm that the foregoing is true and correct and that I am of lawful age and competent to make this affidavit. I declare that everything stated in this Affidavit is true, correct and complete to the best of my knowledge and belief, under penalty of perjury under the laws of the United States of America.

## ACKNOWLEDGEMENT

The below signed witness do acknowledge that Julia Teryaeva-Reed, personally appeared and known to me to be the woman whose name subscribed to the within instrument and acknowledged to be the same, on the 1st day of August, 2024.

Witness 1
Name: Sarah Ladouceur
ID: 69030-0606
Signature: ___

Witness 2
Name: Donna Schucker
ID: 49920-510
Signature: Donna Schucker

Witness 3
Name: Zayh Sandoval
ID: 97263.298
Signature: ___